542 S.E.2d 466

**LAWYER DISCIPLINARY
BOARD, Complainant,**

v.

**James W. KEENAN, an active member
of the West Virginia State Bar,
Respondent.**

**No. 25161.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 3, 2000.

Decided Dec. 5, 2000.

Dissenting Opinion of Justice Starcher
Dec. 13, 2000.

---

Amie L. Johnson, Esq., Office of Disciplinary Counsel, Charleston, West Virginia, Attorney for Complainant.

James D. McQueen, Jr., Esq., McQueen, Harmon & Potter, Charleston, West Virginia, Attorney for Respondent.

PER CURIAM:

This disciplinary proceeding is before this Court upon a review of the May 17, 2000, Report and Recommended Sanctions of the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board ("Board") concerning the respondent, James W. Keenan ("Keenan"), a member of the West Virginia State Bar. Keenan was charged with multiple violations of the *West Virginia Rules of Professional Conduct* in an eight-count complaint. Keenan did not contest the facts set forth in the HPS report.

The HPS found that the charges complained of by the Office of Disciplinary Counsel ("OCD") were substantiated and sanctions were warranted. The HPS recommends to this Court that: (1) Keenan be suspended from the practice of law for 3 months; (2) that upon reinstatement Keenan be supervised in the practice of law by another attorney for a period of 2 years; (3) that the supervising attorney review all the complaints filed against Keenan; (4) that Keenan seek evaluation for both his bipolar illness and his alcohol abuse and submit to the recommended treatment for these illnesses; (5) that Keenan be censured; and (6) that Keenan be required to pay the costs of these proceedings.

Keenan stipulated to the findings of fact made by the HPS. However, Keenan objects to the recommended 3–month suspension of his law license, and requests that we not follow the recommendation of the HPS.

Upon a thorough review of the record, we agree that the charges were substantiated. And, we agree with most of the HPS's recommended penalties, but we modify the HPS recommendations and order that James Keenan shall: (1) be publicly censured; (2) practice law under the supervision of another attorney practice for 2½ years pursuant to

the conditions set forth by the Board; (3) submit to evaluations for both alcoholism and his bipolar illness and receive treatment as recommended; (4) participate in Alcoholics Anonymous or other similar group; (5) attend 6 hours of continuing legal education on office management; and, (6) reimburse the Lawyer Disciplinary Board for the costs of these proceedings.

## I.

### *Factual and Procedural History*

#### Count I—Johnny Ward

The complainant, Johnny Ward, desired to bring a medical malpractice action against a physician, and he retained an attorney to represent him in the matter. Five days before the expiration of the statute of limitations, the attorney retained by Mr. Ward decided not to handle the case and informed Mr. Ward of his decision. Mr. Ward then contacted Keenan. Keenan advised Mr. Ward that he did not normally handle medical malpractice cases, and that he (Keenan) would need to contact a more experienced attorney to assist in the case, but that he would timely file a complaint.

Keenan filed the complaint in the Circuit Court of Fayette County on March 23, 1995. After the filing of the complaint, Mr. Ward called Keenan several times to discuss his case, but his calls were never returned. Apparently sometime in the fall of 1995, Mr. Ward grew dissatisfied with Keenan and left a message at Keenan's office that he was terminating Keenan's representation. During this communication with Keenan's office, Mr. Ward was informed that his case had been dismissed in October of 1995 for failure to perfect service of process within the 180 days as required by Rule 4(k) of the *West Virginia Rules of Civil Procedure.*[1]

In January of 1996, Mr. Ward filed an ethics complaint against Keenan. A copy of the complaint was sent to Keenan by the

---

1. Rule 4(k) of the *West Virginia Rules of Civil Procedure* provides, in pertinent part:

    (k) *Time limit for service.*—If service of the summons and complaint is not made upon a defendant within 120 days after the filing of

    the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant[.]

ODC on January 29, 1996, in which Keenan was instructed to reply to the complaint within 10 days. Keenan never responded. On March 25, 1996, Keenan was sent a second request by the ODC to respond to the ethics complaint. Keenan responded to the complaint by letter dated April 5, 1996.

The Board charged Keenan with violating: (1) Rule 1.3[2] of the *Rules of Professional Conduct* for failing to act with reasonable diligence; (2) Rule 1.4(a)[3] for failing to keep his client reasonably informed; (3) Rule 1.16(d)[4] for failing to properly terminate his representation of Mr. Ward; and (4) Rule 8.1(b)[5] for failing to respond to a demand for information from the OCD.

Keenan stipulated to the charges made by the Board.

### Count II—Cecil Hill

On October 19, 1995, the complainant, Cecil Hill, retained Keenan to represent him in a divorce, and paid Keenan $2,500.00 as a retainer. At the initial meeting, Keenan advised Mr. Hill that he charged an hourly fee of $125.00.

Keenan prepared and filed several documents in connection with the divorce including the initial complaint, a motion for *pendente lite* relief, a response to a family violence petition, and an appeal of a family violence protective order.

In December 1995, Mr. Hill reconciled with his wife. Following the reconciliation, Mr. Hill called Keenan's office several times requesting a termination of Keenan's services, an itemized accounting of his fee, and a return of any unearned monies. Keenan did not return Mr. Hill's telephone calls. On January 17, 1996, Mr. Hill sent Keenan a certified letter indicating his desire that the divorce action be suspended, and again requesting that Keenan return any unearned portion of the fee. By letter dated January 26, 1996, Keenan responded to Mr. Hill stating that the agreement reached between them included a non-refundable retainer.

Mr. Hill filed an ethics complaint against Keenan. Following a review of the matter, the Board charged Keenan with violating Rule 1.15(b)[6] of the *Rules of Professional Conduct* for failing to promptly render a full accounting to his client.

Keenan stipulated to the charge made by the Board.

### Count III—Hewitt Grasty

On September 8, 1995, the complainant, Hewitt Grasty was arrested and charged with three counts of aggravated robbery. Keenan was appointed by the Circuit Court of Fayette County to represent Mr. Grasty in September, 1995.

---

**2.** Rule 1.3 of the *Rules of Professional Conduct* provides:

> A lawyer shall act with reasonable diligence and promptness in representing a client.

**3.** Rule 1.4(a) of the *Rules of Professional Conduct* provides, in pertinent part:

> A lawyer shall keep a client reasonable informed about the status of a matter and promptly comply with reasonable requests for information.

**4.** Rule 1.16(d) of the *Rules of Professional Conduct* provides, in pertinent part:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**5.** Rule 8.1(b) of the *Rules of Professional Conduct* provides, in pertinent part:

> (b) [an attorney shall not] fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

**6.** Rule 1.15(b) of the *Rules of Professional Conduct* provides, in pertinent part:

> Upon receiving funds or other .property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Keenan negotiated a plea agreement with the prosecuting attorney on behalf of Mr. Grasty. The plea agreement was accepted by Mr. Grasty, and by the circuit court on March 14, 1996. Mr. Grasty entered both a written and an oral plea of guilty before the court. During the hearing, Mr. Grasty indicated that he was satisfied with Keenan's representation.

Apparently Mr. Grasty had second thoughts about the plea agreement and Keenan's representation, and on September 23, 1996, he filed an ethics complaint alleging that Keenan had violated various rules of professional conduct.

On December 5, 1996, the ODC sent a copy of the ethics complaint to Keenan instructing him to respond to the complaint within 10 days. Keenan did not respond to the ODC. On March 3, 1997, the ODC sent a second request to Keenan asking him to respond to the complaint. Keenan responded on March 13, 1997.

After a review of the evidence, the Board found that Keenan had not violated the *Rules of Professional Conduct* with respect to his representation of Mr. Grasty. However, the Board charged Keenan with violating Rule 8.1(b) [7] for failing to respond to the ODC's inquiry in a timely manner.

Keenan stipulated to the charge made by the Board.

### Count IV—Woodrow Blackwell

In February of 1995, the complainant, Mr. Woodrow Blackwell retained Keenan for $750.00 to represent Mr. Blackwell in an action to modify his court-ordered child support. Pursuant to the representation agreement, Keenan filed a petition to modify support payments on February 25, 1995. A hearing was held on June 8, 1995, resulting in a reduction of Mr. Blackwell's support obligation.

On December 16, 1995, the Social Security Administration ruled that Mr. Blackwell was totally disabled and awarded Social Security

benefits to him and his children. Mr. Blackwell, by letter, informed Keenan of the ruling. Based on the Social Security ruling Keenan filed a second petition to modify child support payments. Keenan and Mr. Blackwell did not discuss an additional fee for a second petition.

After filing the second petition, Keenan took no further action. Mr. Blackwell wrote three letters to Keenan between March 1, 1996 and April 26, 1996, asking for a status report. Keenan did not respond to Mr. Blackwell's letters. By letter dated July 18, 1996, Mr. Blackwell terminated Keenan's services and asked for a full refund of all attorney fees. Keenan later testified before the Board that he filed the second petition out of "benevolence" to Mr. Blackwell, but had no intention of representing him on the second petition. However, Keenan failed to advise Mr. Blackwell that he was not going to continue the case, nor did he file a motion to withdraw.

Mr. Blackwell appeared *pro se* before the family law master and requested a modification of his child support obligation, and was partially successful in his attempt.

Mr. Blackwell filed an ethics complaint against Keenan. A copy of the complaint was forwarded to Keenan by the ODC on December 5, 1996, with instructions to respond to the complaint within 10 days. Keenan did not respond as instructed. Accordingly, a second request was made on March 3, 1997, and Keenan responded on March 12, 1997.

The Board charged Keenan with violating Rule 1.3 [8] for his lack of diligence, Rule 1.4(a) [9] for not communicating with his client, Rule 1.16(d) [10] for failing to properly withdraw from the case, and Rule 8.1(b) [11] for failing to respond to the Disciplinary Counsel as required.

Keenan stipulated to the charges made by the Board.

7.  See *supra* note 5.

8.  See *supra* note 2.

9.  See *supra* note 3.

10.  See *supra* note 4.

11.  See *supra* note 5.

### Count V—James Sterling

The complainant, James Sterling, hired Keenan to represent him in an uncontested divorce. The final hearing before the divorce was held on January 11, 1996, and Keenan was instructed by the family law master to prepare the final order. Keenan later testified before the Board that he did prepare the divorce order, and that he provided it to the law master. According to Keenan, the law master apparently misplaced the order. Unfortunately Keenan could not prove that there was an order because he had not made a copy.

When Mr. Sterling did not receive his final divorce order by June of 1996, he "went to the courthouse," and was informed that the order had not been entered. Between June and November of 1996, Mr. Sterling called Keenan's office several times to ask about the order, but was unable to talk to Keenan.

Mr. Sterling filed an ethics complaint against Keenan on December 3, 1996. A copy of the complaint was forwarded to Keenan by the ODC on December 9, 1996, with instructions to respond to the complaint within 10 days. Keenan did not respond to the complaint.

On March 3, 1997, a second request for a response to the ethics complaint was sent to Keenan by the ODC. Keenan responded to the second request on March 12, 1997. Keenan also prepared a final divorce order for Mr. Sterling and submitted it to the family law master on March 12, 1997.

The Board charged Keenan with violating Rule 1.3 [12] for failing to act with diligence, and Rule 8.1(b) [13] for failing to respond to the Disciplinary Counsel as requested.

Keenan stipulated to the charges made by the Board.

### Count VI—Luther Cook

The complainant, Luther Cook, was involved in a car accident. He retained Keenan to represent him in a civil action against the other driver. The case went to trial on July 18, 1996. The jury found Mr. Cook 49% negligent and the defendant 51% negligent. After calculations, Mr. Cook was awarded a judgment of $707.39.

Following the trial, a dispute arose between counsel for both parties as to whether Mr. Cook would have to pay a portion of the court costs. The defendant's attorney prepared a final order reflecting the jury decision, but Keenan refused to sign the order because the order did not resolve the issue of court costs.

On March 20, 1997, Mr. Cook filed an ethics complaint against both Keenan and defendant's counsel because Mr. Cook had not received the money from his judgment. A copy of the complaint was forwarded to Keenan on April 4, 1997, by the ODC, along with instructions to respond to the complaint within 10 days. Keenan did not respond to the complaint. On May 15, 1997, a second request to respond to the complaint was sent to Keenan, and he did not respond to this request. Keenan eventually responded to the Disciplinary Counsel's June 18, 1997 request—the third.

Keenan testified before the Board that he refused to sign the order because he was waiting for the judge to rule on the court costs issue.[14]

The Board charged Keenan with violating Rule 8.1(b) [15] for failing to respond to a request for information from the Disciplinary Counsel.

Keenan stipulated to the Board's charge.

### Count VII—Diana Jackson

The complainant, Diana Jackson, retained Keenan to represent her in a divorce action. Ms. Jackson sought a divorce on the grounds of adultery and physical abuse. On August 8, 1996, the day scheduled for a final hearing, a settlement was reached between the parties. Pursuant to the settlement, Ms. Jackson agreed to relinquish any right to alimony in return for the deed to the marital resi-

---

12. See *supra* note 2.

13. See *supra* note 5.

14. According to the briefs submitted to this Court, no decision has yet been made by the circuit court concerning court costs.

15. See *supra* note 5.

dence, a share in her husband's pension, payment of assorted household bills, and reimbursement of her attorney fees. A final order was entered on November 19, 1996.

After receiving a copy of the final order, Ms. Jackson determined that the order did not include the total agreement between the parties. She contacted Keenan in November of 1996, and questioned why there was no provision in the order for her receiving a share in her ex-husband's pension. According to Ms. Jackson, Keenan informed her that because she was divorcing her husband she was not eligible for a share in his pension. Additionally, between November 1996 and June 1997, Ms. Jackson received only a portion of the money owed her by her former husband, and did not receive the deed to the house.

Ms. Jackson filed an ethics complaint against Keenan, and on June 2, 1997, a copy of the complaint was forwarded to Keenan by the ODC with instructions to reply to the complaint within 10 days. Keenan failed to respond to the ODC's request. A second request for a reply to the complaint was sent to Keenan on September 10, 1997. Keenan responded by letter dated September 23, 1997. Keenan informed the ODC that counsel for the exhusband was supposed to prepare the deed, but that the husband's counsel had died before he was able to prepare the deed.

After a meeting with Ms. Jackson on June 27, 1997, Keenan agreed to prepare the deed.

In January of 1998, Keenan prepared the deed and wrote one letter to Ms. Jackson's ex-husband regarding the unpaid monies. Keenan did not charge Ms. Jackson an additional fee for this, but he declined to take further action unless he was hired and paid for his services.

The Board charged Keenan with violating Rule 1.2(a) [16] for his initial refusal to prepare

the deed, and violating Rule 8.1(b) [17] of the *Rules of Professional Conduct* for failing to respond to the ODC in a timely manner.

Keenan stipulated to the charges of the Board.

### Count VIII—Kathryn Powers

Keenan originally represented the complainant Kathryn Powers in a 1994 divorce action. By order dated September 26, 1994, Ms. Powers' ex-husband was ordered to make monthly alimony payments of $100.00 for 3 years. He was also ordered to pay $1,200.00 to Ms. Powers as her share in his retirement funds.

Sometime after the divorce order was entered, Ms. Powers remarried, and her ex-husband ceased making the alimony payments. Additionally, her ex-husband failed to pay Ms. Powers her share of his retirement. Ms. Powers consulted with Keenan in January 1996, and Keenan agreed to file a contempt petition on her behalf. Keenan requested and received a fee of $500.00.

Keenan failed to file the petition for contempt. However, Ms. Powers' ex-husband filed a petition to modify the original divorce decree, seeking to end the payment of alimony. At the hearing on the ex-husband's petition to eliminate alimony on August 20, 1996, before a family law master, Keenan attempted to raise the contempt issue relating to the ex-husband's failure to pay certain monies to his former wife. However, the family law master would not permit Keenan to raise the contempt issue because it was not before the court.

Between December of 1996 and May 1997, Ms. Powers attempted to call Keenan several times. Keenan did not return her phone calls, nor would he schedule an appointment to meet with her. On March 11, 1997, Ms. Powers sent Keenan a certified letter asking him to schedule a contempt hearing, or re-

---

**16.** Rule 1.2(a) of the *Rules of Professional Conduct* provides, in pertinent part:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**17.** See *supra* note 5.

fund her money. Keenan did not respond to the letter.

Ms. Powers filed an ethics complaint against Keenan, and on June 3, 1997, a copy of this complaint was sent to Keenan by the ODC along with instructions to reply to the complaint within 10 days. Keenan failed to timely respond to the request. The ODC sent a second request on September 10, 1997. On September 23, 1997, Keenan responded to the ethics complaint.

The Board charged Keenan with violating Rule 1.4(a) [18] for failing to respond to his client, and with violating Rule 8.1(b) [19] for failing to respond to the Disciplinary Counsel in a timely manner.

Keenan stipulated to the charges made by the Board.[20]

## II.

### Discussion

■ We apply a *de novo* standard of review when presented with a lawyer disciplinary matter.

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syllabus Point 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). *See also* Syllabus Point 2, *Lawyer Disciplinary Board v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995); Syllabus Point 3, *Lawyer Disciplinary Board v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). We note that Keenan does not dispute the

18. See *supra* note 3.

19. See *supra* note 5.

charges made by the HPS, but he does contest the HPS's recommendation that his license be suspended.

■ We have held that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee of Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). In reviewing attorney discipline this Court "must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, in part, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150 358 S.E.2d 234 (1987).

The HPS has recommended that: (1) Keenan be suspended from the practice of law for 3 months; (2) that upon reinstatement Keenan be supervised in the practice of law by another attorney for a period of 2 years; (3) that the supervising attorney review all the complaints filed against Keenan; (4) that Keenan seek evaluation for both his bipolar illness and his alcohol abuse and submit to the recommended treatment for these illnesses; (5) that Keenan be censured; and, (6) that Keenan be required to pay the costs of these proceedings.

While we are assisted by the HPS's recommendations, we must examine each case separately in an attempt to provide appropriate discipline.

In the case before us, Keenan has admitted to an alcohol problem, and has introduced evidence that he was being treated for a bipolar condition during the time period that the grievances that are the subject of this disciplinary proceeding were filed. Testimony was also offered before the HPS indicat-

20. In its brief, the HPS made this Court aware of several ethics complaints which have been filed subsequent to the current matter. We will not discuss these new charges as they were not made part of the case now before us.

ing that Keenan had overextended himself by attempting to open a second law office in Charleston, West Virginia. This second office has since been closed.

■ An examination of the violations charged in this matter reveal that most of the offenses resulted from lack of diligence, and poor communication with clients and the Office of Disciplinary Counsel. While we do not condone these practices, and we agree that Mr. Keenan must be closely monitored and receive proper treatment for medical problems, we believe that a 3–month suspension from the practice of law may only aggravate Mr. Keenan's problems. Because of the obvious economic consequences that the respondent would suffer with an inability to practice law, we will not suspend his license to practice. We do, however, concur with other recommendations of the Hearing Panel Subcommittee.

### III.

#### Conclusion

Accordingly, we impose the following sanctions: (1) James W. Keenan is hereby publicly censured; (2) Keenan shall practice law under the supervision of another attorney pursuant to the provisions set forth by the Board for a period of 2½ years; (3) Keenan must submit to an evaluation for his alcohol and bipolar problems and submit to the recommended treatment for these problems; (4) Keenan shall participate in Alcoholics Anonymous or other similar program; (5) Keenan shall attend 6 hours of continuing legal education in office management; and, (6) Keenan shall pay all costs incurred in the investigation and hearing of this matter.

Public Censure, Supervised Practice, Education, and Costs.

Justice SCOTT, deeming himself disqualified, did not participate in the decision of this case.

DAVIS, Justice, dissenting:

(Filed Dec. 13, 2000)

In this case, it was determined conclusively through stipulation that Mr. Keenan violated the Rules of Professional Conduct in matters involving eight clients. The Lawyer Disciplinary Board (the "Board") found that the violations warranted, among other things, a three-month suspension from the practice of law. However, the majority opinion has declined to follow the Board's recommendation of suspension. I believe that the majority's decision not to impose a three-month suspension, as recommended, was arbitrary and unsupported by any mitigating evidence. Consequently, I dissent from the decision in this case.

My main concern involves Mr. Keenan's repeated display of arrogance in ignoring requests for information by the Office of Disciplinary Counsel (the "ODC"). This Court has cautioned members of the Bar to timely respond to communications by the ODC. In Syllabus point 1 of *Committee on Legal Ethics v. Martin,* 187 W.Va. 340, 419 S.E.2d 4 (1992), we held that:

> An attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests of the West Virginia State Bar concerning allegations in a disciplinary complaint. Such a violation is not contingent upon the issuance of a subpoena for the attorney, but can result from the mere failure to respond to a request for information by the Bar in connection with an investigation of an ethics complaint.[1]

(Footnote added). In other words, when the ODC requests an attorney to provide information about a disciplinary complaint's allegations, it is expected that the attorney will cooperate. Mr. Keenan's blatant refusals to comply with the ODC's information requests do not constitute the contemplated cooperation.

Furthermore, the majority opinion does not adhere to the procedures established for

---

**1.** *See also* Syl. pt. 11, *Committee on Legal Ethics of The West Virginia State Bar v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993) ("Under Rule 8.1(b) of the Rules of Professional Conduct, as explained in *Committee on Legal Ethics v. Martin,* 187 W.Va. 340, 419 S.E.2d 4 (1992), a disciplin-

ary violation can be imposed if a lawyer fails to cooperate with the Committee on Legal Ethics of the West Virginia State Bar. To the extent that *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 226 S.E.2d 427 (1976), differs with *Martin,* it is overruled.").

determining the discipline warranted in a particular case. The guiding principle in this Court's *de novo* review of sanctions to be imposed upon an attorney was crystallized in Syllabus point 3 of *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987):

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Under *Walker,* it is the duty of this Court to fashion sanctions that "serve as an effective deterrent to other members" of the legal community. In the present case, Mr. Keenan intentionally ignored at least eight requests by the ODC to respond to complaints lodged against him.

In my judgment, Mr. Keenan's deliberate conduct in repeatedly ignoring communications from the ODC, coupled with his consistent failure to respond to his clients' communications, demand that this Court suspend his license to practice law for a minimum of three months. *See Lawyer Disciplinary Bd. v. Swisher,* 203 W.Va. 603, 509 S.E.2d 884 (1998) (per curiam) (conditionally suspending license for, among other things, failure to respond to ODC communication); *Committee on Legal Ethics of the West Virginia State Bar v. Karl,* 192 W.Va. 23, 449 S.E.2d 277 (1994) (holding that, among other things, failure to respond to inquiries from disciplinary panels violated ethical standards and warranted three-month suspension, even though the attorney was no longer engaged in active practice of law as result of assuming judicial office); *Committee on Legal Ethics v. Keenan,* 192 W.Va. 90, 450 S.E.2d 787 (1994) (annulling license of previously suspended attorney for failing to cooperate with and respond to ethics panel investigation); *Committee on Legal Ethics v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993) (concluding that failure to respond to ethical inquiries by the Committee on Legal Ethics warranted one-month suspension).

I am mindful that mitigating circumstances should be considered when this Court has to determine whether to suspend an attorney's license. Accordingly, I have searched the lines of the majority opinion and combed the record in this case. In doing so, I have not uncovered any mitigating factors that would require this Court to disregard the Board's recommendation of a three-month suspension. The majority opinion points out, in a conclusory fashion, that "[b]ecause of the obvious economic consequences that the respondent would suffer with an inability to practice law, we would not suspend his license to practice." Negative economic consequences brought about as a result of the suspension of an attorney's license, in and of itself, are not a mitigating factor for sanctioning purposes. In fact, negative economic consequences frequently accompany the suspension of a license to practice law. To accept the reasoning of the majority decision in this case, though, would mean that this Court could never suspend an attorney's license because to do so would result in negative economic consequences for the attorney. I cannot subscribe to such reasoning.

For the reasons stated, I respectfully dissent from the majority opinion in this case.