671 S.E.2d 763

**LAWYER DISCIPLINARY BOARD, Petitioner**

v.

**William H. DUTY, a member of The West Virginia State Bar, Respondent.**

No. 33069.

Supreme Court of Appeals of West Virginia.

Submitted Upon Rehearing Oct. 7, 2008.

Decided Nov. 25, 2008.

---

**2.** Judge Walker dissented from the Court's decision in Rashid.

Rachael L. Fletcher Cipoletti, Esq., Chief Lawyer, Office of Disciplinary Counsel, Charleston, WV, for the Petitioner.

William H. Duty, Williamson, WV, pro se.

PER CURIAM:

This lawyer disciplinary proceeding concerning the respondent, William H. Duty, is before this Court upon the findings of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board and the Subcommittee's recommended sanctions: (1) that respondent Duty's license to practice law in the State of West Virginia be annulled; (2) that he make restitution in the amount of $2,000 to Randy Stiltner, one of his former clients; (3) that, as a condition of any reinstatement, respondent Duty's practice be supervised for a period of two years, that he be required to participate in an alcoholics anonymous or narcotics anonymous program approved by the Office of Disciplinary Counsel, and that respondent Duty complete 12 hours of legal ethics education; and (4) that he pay the costs of this proceeding.

Respondent Duty was admitted to The West Virginia State Bar in 1986 and maintains a private law practice in Williamson, Mingo County, West Virginia. The findings and recommended sanctions of the Hearing Panel Subcommittee arose from a five-count Statement of Charges filed in this Court by the Investigative Panel of the Lawyer Disciplinary Board. Following an evidentiary hearing, the Hearing Panel Subcommittee found that the allegations were proven and that the respondent's actions constituted transgressions of the West Virginia Rules of Professional Conduct. The Subcommittee's Report containing its findings and the recommended sanctions was filed in this Court on May 17, 2007. Although Duty filed an objection to the Report, he did not file a brief. Nor did he appear before this Court when this matter was called for oral argument.[1]

On February 15, 2008, this Court filed an opinion adopting the recommended sanc-

---

1. It should be noted that, following the calling of the case for oral argument on January 8, 2008, respondent Duty, on January 22, 2008, filed a motion to reargue. This Court refused the motion on January 24, 2008.

tions. Thereafter, respondent Duty filed a petition for rehearing. By order entered on April 3, 2008, a rehearing was granted, and Disciplinary Counsel and respondent Duty appeared and submitted argument before this Court.[2]

Consequently, this Court has before it the findings and recommendations of the Hearing Panel Subcommittee, all matters of record and the briefs and argument of the parties.[3] Upon review by this Court *de novo*, and for the reasons expressed below, this Court again concludes that the findings of the Subcommittee are supported by the evidence and that this Court should adopt the recommended sanctions. Accordingly, relief is denied with regard to respondent Duty's petition for rehearing.[4]

## I.

## Procedural Background

In April 2006, the Investigative Panel of the Lawyer Disciplinary Board, upon a finding of probable cause, filed a five-count Statement of Charges against Duty alleging a number of violations of the West Virginia Rules of Professional Conduct.

Count I (I.D. No. 05–03–165) was based upon an ethics complaint filed by Sandy Gillman in March 2005. Gillman, a former client of the respondent, asserted that, although she hired Duty in June 2004 to pursue her personal injury claim, he failed to tell her until three days before the running of the statute of limitations in March 2005 that, unless she paid a $200 filing fee, he would not file the action on her behalf. Gillman was unable to raise the money or obtain new counsel upon such short notice, and the action was never filed. Count II (I.D. No. 04–

03–133) arose from an ethics complaint filed in March 2004 by Sheria Fields, a former employee of the respondent. Fields, a non-lawyer who was discharged by respondent Duty, asserted that Duty violated the Rules of Professional Conduct by agreeing to share his fee with her with regard to his representation of Ernest Prater in a personal injury action. In related Count III (I.D. No. 04–02–256), Prater, in an ethics complaint filed in April 2004, alleged that respondent Duty attempted to withhold $3,500 in expenses from Prater's settlement. According to Prater, no such expenses were incurred. Count IV (I.D. Nos. 04–03–431 and 04–03–432) was based upon ethics complaints filed in August 2004 by Rita Sammons and her sister, Rachel Lockhart. Under this Count, respondent Duty is charged with opening a checking account in his own name with a $25,000 settlement check belonging to Lockhart, rather than opening a trust account for the $25,000 as Lockhart requested. Duty allegedly used the checking account for his personal and office expenses and co-mingled Lockhart's funds with other monies. Finally Count V (I.D. No. 04–03–541) arose from an ethics complaint filed by Randy Stiltner in September 2004. Stiltner hired respondent Duty to pursue his claim that a mobile home he purchased was defective. The ethics complaint concerns an attorney fee dispute wherein Stiltner alleged that, after paying Duty various attorney fees, Duty unfairly attempted to withhold an additional $2,500 from Stiltner's settlement of the claim.

On January 18, 2007, an evidentiary hearing upon the Statement of Charges was conducted before the Hearing Panel Subcommittee, and the testimony of a number of witnesses and approximately 80 exhibits were placed in the record. Respondent

---

**2.** Rule 24 of the West Virginia Rules of Appellate Procedure provides for the filing and disposition of a petition for rehearing. The granting of a rehearing withdraws the prior opinion filed by the Supreme Court of Appeals. *Miller v. Burley,* 155 W.Va. 681, 698, 187 S.E.2d 803, 813 (1972); *State ex rel. Moats v. Janco,* 154 W.Va. 887, 901, 180 S.E.2d 74, 83 (1971).

**3.** Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals

of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

**4.** The Office of Disciplinary Counsel has informed this Court that, in addition to the ethics complaints resulting in this proceeding, the respondent is the subject of six other ethics complaints recently filed. Those complaints are unresolved at this point.

Duty was represented at the hearing by attorney Glen R. Rutledge. On May 17, 2007, the Subcommittee filed a Report setting forth its findings and the above recommended sanctions. This Court will discuss the Subcommittee's findings and recommended sanctions more fully below. In September 2007, this Court entered an order scheduling this matter for oral argument on January 8, 2008. Respondent Duty, proceeding *pro se*, did not file a brief in this Court. Nor did he appear when this matter was called for oral argument. As stated above, following the filing of an opinion in this matter, this Court granted the respondent a rehearing, and briefs and argument were submitted.

## II.

### Standards of Review

 In *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court took the opportunity to "resolve any doubt as to the applicable standard of review" in lawyer disciplinary cases. 192 W.Va. at 289, 452 S.E.2d at 380. Thus, syllabus point 3 of *McCorkle* holds:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 1, *Lawyer Disciplinary Board v. Lakin*, 217 W.Va. 134, 617 S.E.2d 484 (2005); syl. pt. 1, *Lawyer Disciplinary Board v. Lusk*, 212 W.Va. 456, 574 S.E.2d 788 (2002); syl. pt. 3, *Lawyer Disciplinary Board v. Barber*, 211 W.Va. 358, 566 S.E.2d 245 (2002); syl. pt. 2, *Lawyer Disciplinary Board v. Turgeon*, 210 W.Va. 181, 557 S.E.2d 235 (2000), *cert. denied*, 534 U.S. 841, 122 S.Ct. 99, 151 L.Ed.2d 59 (2001).

 The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. As syllabus point 3 of *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985), holds: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 2, *Barber, supra*; syl. pt. 3, *Lawyer Disciplinary Board v. Frame*, 198 W.Va. 166, 479 S.E.2d 676 (1996). *See also*, 2A M.J. *Attorney and Client* § 55 (1993), stating that the Supreme Court of Appeals of West Virginia "is the final arbiter of legal ethics problems."

 Rule 3.7. of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of a lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *Lusk, supra*, 212 W.Va. at 461, 574 S.E.2d at 793; syl. pt. 2, *Lawyer Disciplinary Board v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995). The various sanctions which may be recommended to this Court are set forth in Rule 3.15.[5] and, in making a recommendation or imposing discipline, certain factors are to be considered pursuant to Rule 3.16. As syllabus point 4 of *Office of Disciplinary Counsel*

---

5. Rule 3.15. of the West Virginia Rules of Lawyer Disciplinary Procedure provides:

A Hearing Panel Subcommittee may recommend or the Supreme Court of Appeals may impose any one or more of the following sanctions for a violation of the Rules of Professional Conduct or pursuant to Rule 3.14. [entitled "Grounds for discipline"]: (1) probation; (2) restitution; (3) limitation on the nature or extent of future practice; (4) supervised practice; (5) community service; (6) admonishment; (7) reprimand; (8) suspension; or (9) annulment. When a sanction is imposed the Hearing Panel Subcommittee may recommend and the Court may order the lawyer to reimburse the Lawyer Disciplinary Board for the costs of the proceeding. Willful failure to reimburse the Board may be punished as contempt of the Court.

*v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998), holds:

Rule 3.16. of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [Supreme Court of Appeals of West Virginia] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 2, *Lakin, supra*; syl. pt. 4, *Lawyer Disciplinary Board v. Battistelli*, 206 W.Va. 197, 523 S.E.2d 257 (1999). *See also*, syl. pt. 3, *Lawyer Disciplinary Board v. Keenan*, 208 W.Va. 645, 542 S.E.2d 466 (2000).

## III.

### Discussion

This Court has conducted a thorough review of the record in this matter and has devoted considerable time to the transcript and numerous exhibits with regard to the January 18, 2007, hearing before the Hearing Panel Subcommittee. As a result, this Court concludes that the findings of the Subcommittee, set forth below as to each Count, are supported by reliable, probative and substantial evidence, as that standard is expressed in *McCorkle*, and that the allegations in the Statement of Charges were proven by clear and convincing evidence.

■ As to Count I, the evidence supports the finding that Sandy Gillman hired respondent Duty in June 2004 to pursue her personal injury claim. Although members of Duty's staff testified that they explained the statute of limitations to her and encouraged her to stop by the office, Duty did not personally inform her about the status of her claim until March 8, 2005, at which time he told her that the statute of limitations would

expire on March 11, 2005, and that, if she did not pay the $200 filing fee, the action would not be filed. Gillman was unable to raise the money or obtain new counsel upon such short notice, and the action was never filed. After Gillman filed the ethics complaint, the Office of Disciplinary Counsel asked Duty to file a response. He failed to do so.

Accordingly, the Hearing Panel Subcommittee appropriately determined that respondent Duty violated Rule 1.3. of the West Virginia Rules of Professional Conduct which requires a lawyer to "act with reasonable diligence and promptness in representing a client;" Rule 1.4.(a) and (b) which requires that a client be "reasonably informed about the status of a matter" and which requires that a lawyer provide explanations during his or her representation so that a client can make "informed decisions;" and Rule 1.16.(d) which requires a lawyer to protect a client's interests by allowing time for the client to employ other counsel. In addition, the Subcommittee appropriately determined that respondent Duty violated Rule 8.1.(b) which states that a lawyer, in connection with a disciplinary matter, shall not "knowingly fail to respond to a lawful demand for information" from a disciplinary authority.

■ With regard to Counts II and III, the evidence supports the finding of the Subcommittee of ethics violations with regard to the Ernest Prater matter. The testimony at the hearing revealed that Fields, a nonlawyer employee of respondent Duty, was acquainted with Prater and knew that he had been in a motor vehicle accident. When she gave that information to Duty, he indicated that, if she could secure Prater as a client, he would give her half of the attorney fees. Prater became a client, and, upon settlement of the action, Duty gave Fields approximately $16,000. Although Duty asserted that the payment was in the nature of an employee bonus rather than a fee-sharing arrangement, the payment constituted 50% of the attorney fees in the *Prater* action. Moreover, Prater signed a retainer agreement and became a client prior to ever meeting or speaking with respondent Duty. The evidence, thus, supports the determination of the Subcommittee that respondent Duty vio-

lated Rule 5.4.(a) which states that a lawyer "shall not share legal fees with a nonlawyer."

■ The evidence concerning Count III reveals that respondent Duty sought to withhold $3,500 in expenses from Prater's settlement. Duty's co-counsel in the action, Chris Harris, objected to the withholding because Duty was unable to document the expenses. Nor did Prater have any knowledge of Duty's claim prior to the final distribution of the settlement. Duty abandoned the claim, and the $3,500 was not withheld from the settlement. Upon that evidence, the Subcommittee was justified in determining that respondent Duty violated Rule 8.4.(a) which provides that it is professional misconduct for a lawyer to "attempt to violate the Rules of Professional Conduct;" Rule 8.4.(c) which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" and Rule 1.5.(a) which states that a lawyer's fee shall be reasonable.

■ Count IV, particularly egregious, concerns the ethics complaints of Rita Sammons and her sister, Rachel Lockhart. Lockhart retained Duty to represent her in pursuing damages arising from an automobile accident. The evidence demonstrates without question that, rather than placing the $25,000 settlement check in trust as Lockhart requested (while the remainder of the action was being litigated), Duty opened a checking account in his own name at the Bank of Mingo in Mingo County, West Virginia, with the $25,000 and used that account for his personal and office expenses and, in addition, co-mingled the funds with other monies. The account was opened on February 10, 2003, and by February 19, 2003, the available funds were reduced to $7,634.12. Thereafter, the level of monies in the account varied greatly, and it was only after the two ethics complaints were filed that Duty made restitution to Lockhart. The evidence also demonstrates that, in October 2004, respondent Duty attempted to persuade Sammons to withdraw the ethics complaints. Moreover, on March 31, 2005, Duty falsely testified before the Office of Disciplinary Counsel that he had placed Lockhart's settlement check in trust and that he had not spent those funds.

Therefore, the Hearing Panel Subcommittee appropriately determined that respondent Duty violated Rule 1.15.(a) and (b) which requires that a lawyer hold property of a client "separate from the lawyer's own property," and that a lawyer shall promptly deliver to a client any funds the client is entitled to receive and shall "render a full accounting regarding such property." Moreover, the Subcommittee appropriately determined that the respondent violated Rule 8.1.(a) which states that a lawyer in connection with a disciplinary matter shall not "knowingly make a false statement of material fact;" Rule 8.4.(a) which provides that it is professional misconduct for a lawyer to "attempt to violate the Rules of Professional Conduct;" Rule 8.4.(c) which provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation;" and Rule 8.4.(d) which states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The latter Rule violations were based upon the attempt to persuade Sammons to withdraw the ethics complaints and the giving of false testimony before the Office of Disciplinary Counsel.

■ Finally, with regard to Count V, the evidence supports the finding of the Hearing Panel Subcommittee that respondent Duty improperly attempted to withhold an additional $2,500 in attorney fees in the Stiltner matter. Stiltner had paid Duty $1,500 in attorney fees and had made additional payments of fees and expenses before the dispute over the $2,500 arose. However, the record demonstrates that, throughout the representation, respondent Duty never gave Stiltner any billing statements, although Stiltner requested them. Stiltner, acknowledging that he still owed Duty legal fees, maintained that the withholding of the $2,500 was an overcharge. Duty, however, failed to keep the funds separate from his other accounts pending resolution of the dispute. Moreover, when the representation was terminated, Duty failed to provide Stiltner with his file.

Consequently, the Hearing Panel Subcommittee properly determined that Duty violated Rule 1.4(a) and (b) which requires that a client be "reasonably informed about the status of a matter" and which requires that a lawyer provide explanations during his or her representation so that a client can make "informed decisions;" and Rule 1.5(b) which provides that "the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation." In addition, this Court is of the opinion that the Subcommittee was warranted in finding that respondent Duty violated Rule 1.15(c) which states that, if a dispute arises between a lawyer and another person concerning property in the lawyer's possession, "the portion in dispute shall be kept separate by the lawyer until the dispute is resolved;" and Rule 1.16(d) which states that, upon termination of the representation, a lawyer shall surrender "papers and property to which the client is entitled."

It should be noted that during his testimony before the Subcommittee on January 18, 2007, respondent Duty admitted that he committed several violations of the Rules of Professional Conduct as described in the Statement of Charges. However, Duty explained that much of his conduct was the result of his chemical dependency upon OxyContin, an addictive, pain relief medication which Duty asserted depleted his finances. However, as the Subcommittee concluded:

> It is noted that the evidence demonstrates that respondent has been addicted to OxyContin for two to three years. While there is medical evidence that respondent was affected by this chemical dependency, it does not establish that the chemical dependency caused respondent's misconduct. * * * Respondent did not seek treatment for his addiction until after or about the time the Statement of Charges in this matter was served upon him.

■ A review of the testimony elicited during the January 18, 2007, hearing suggests that respondent Duty's chemical dependency upon OxyContin, although warranting continuing treatment, did not rise to the level of an avoidance of responsibility with regard to any of the five Counts contained within the Statement of Charges. Consequently, this Court is in agreement with the conclusion of the Subcommittee.

■ Syllabus point 3 of *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987), holds:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Lawyer Disciplinary Board v. Keenan, supra*; syl. pt. 3, *Lawyer Disciplinary Board v. Swisher*, 203 W.Va. 603, 509 S.E.2d 884 (1998). Consistent with that principle is the earlier case of *In re Application by Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970), syllabus point 2 of which confirms: "Disbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Syl. pt. 4, *Lawyer Disciplinary Board v. Sayre*, 207 W.Va. 654, 535 S.E.2d 719 (2000).

■ Here, the actions of respondent Duty involved numerous and differing violations of the Rules of Professional Conduct which not only harmed his clients but undermined the confidence of the public in the legal profession. That confidence was further damaged by Duty's failure to cooperate with, and give truthful statements to, the Office of Disciplinary Counsel. In those circumstances, this Court can only conclude that an annulment of respondent Duty's license to practice law, in conjunction with the other recommended sanctions, would be appropriate to reassure the public of the reliability and integrity of the legal community as well as the legal community's ability to address problems which arise from time to time such as those brought out in these proceedings. Accordingly, the sanctions recommended by the Hearing Panel Subcommittee are adopted, and, in so ruling, we note that

the Office of Disciplinary Counsel is in agreement with those sanctions.

## IV.

## Conclusion

■ Upon all of the above, relief with regard to the petition for rehearing is denied. This Court holds that the Statement of Charges against respondent Duty were proven by clear and convincing evidence as required by Rule 3.7. of the Rules of Lawyer Disciplinary Procedure, and the recommended sanctions set forth in the May 17, 2007, Report of the Hearing Panel Subcommittee are adopted. Those sanctions are: (1) that respondent Duty's license to practice law in the State of West Virginia be annulled; (2) that he make restitution in the amount of $2,000 to Randy Stiltner, one of his former clients; (3) that, as a condition of any reinstatement, respondent Duty's practice be supervised for a period of two years, that he be required to participate in an alcoholics anonymous or narcotics anonymous program approved by the Office of Disciplinary Counsel, and that respondent Duty complete 12 hours of legal ethics education; and (4) that he pay the costs of this proceeding.

Relief Upon Rehearing Denied, License to Practice Law in West Virginia Annulled, and Additional Sanctions.

Chief Justice MAYNARD disqualified.

N. EDWARD EAGLOSKI, II, Judge, sitting by temporary assignment.

Justice ALBRIGHT did not participate in the issuance of this opinion.

Senior Status Justice McHUGH sitting by temporary assignment.