No. 87,392

In the Matter of JAMES W. CODER, *Respondent.*

(35 P.3d 853)

Opinion filed December 7, 2001.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and *Stanton A. Hazlett,* disciplinary administrator, was on the formal complaint for the petitioner.

*James W. Coder,* respondent, argued the cause pro se.

*Per Curiam:* This is an original uncontested proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, James W. Coder. For a companion case, see *Canaan v. Bartee,* No. 86,406, filed this date. The Disciplinary Administrator alleged violations of Kansas Rules of Professional Conduct (KRPC) 1.3 (diligence) (2000 Kan. Ct. R. Annot. 310), 1.4(a) (communication) (2000 Kan. Ct. R. Annot. 320), 3.4(d) (failure to make reasonably diligent effort to comply with discovery) (2000 Kan. Ct. R. Annot. 389), and 8.4(d) (engaging in conduct prejudicial to administration of justice) (2000 Kan. Ct. R. Annot. 420). The panel's findings and conclusions are supported by clear and convincing evidence. We adopt and impose the panel's recommendation of suspension from the practice of law for 1 year, commencing from the date of this opinion.

Coder is an attorney admitted to the practice of law in Kansas in 1987. In his answer to the Deputy Disciplinary Administrator's formal complaint, the respondent admitted nearly all of the allegations contained in the formal complaint. The Deputy Disciplinary Administrator and the respondent stipulated to the admission of exhibits. The panel heard the testimony of John Campell, Michael Bartee, D. Allen Bush, Kelly Jernigan, Mary Curtis, and the respondent.

After hearing the testimony presented and the arguments of the parties, and after reviewing the exhibits admitted into evidence, the panel made the following findings of fact and conclusions of law:

"1. James W. Coder (hereinafter, 'the Respondent') is an attorney at law. . . . His last registration address with the Clerk of the Appellate Courts of Kansas is . . . Topeka, Kansas. . . . The Respondent was admitted to the practice of law in the state of Kansas on April 15, 1987 . . . .

"2. Marvin L. Canaan, a prisoner convicted of murder, aggravated robbery, and aggravated burglary, filed two lawsuits in the District Court of Johnson County, Kansas.

a. The first case, case number 97C16801, was filed by Mr. Canaan on December 22, 1997. The named defendants included: Michael Bartee, Mary Curtis, Steven Obermeier and the State of Kansas. Mr. Canaan sought various forms of relief, including a claim for damages for the intentional infliction of emotional distress.

b. The second case, case number 98C102 was filed on January 5, 1998. The defendants in the second action included: Michael Bartee, Kelly Jernigan, D. Allen Bush, the Johnson County Public Defender's Office, and Mary Curtis. In this case, Mr. Canaan made allegations of legal malpractice, fraud, breach of contract, and breach of warranty. Mr. Canaan sought damages in excess of $50,000.

"3. Each of the named defendants, except Mr. Jernigan, was served with a copy of the petitions. Thereafter, the defendants forwarded copies of the petitions to the Attorney General's office. Mr. Bartee and Mr. Bush telephoned the Attorney General's office, briefly spoke with the Respondent, and learned that the Respondent would be representing them regarding Mr. Canaan's law suits. The defendants did not have any additional contact with the Respondent or anyone from the Attorney General's office during the years 1998 and 1999.

"4. The Respondent, in his capacity as an Assistant Attorney General for the state of Kansas, represented all defendants in both cases.

"5. Without input from any of the defendants (other than the brief contacts initiated by Mr. Bartee and Mr. Bush), the Respondent filed answers on behalf of all defendants. Additionally, the Respondent failed to object or assert as a defense to the cause of action, the lack of proper service on Mr. Jernigan.

"6. Thereafter, in January, 1998, Mr. Canaan served requests for production of documents on the defendants. When the documents were not forthcoming, Mr. Canaan filed a motion to compel discovery. In March, 1998, Mr. Canaan served interrogatories on the defendants.

"7. On August 5, 1998, a case management conference was held by telephone before the Honorable Steve A. Leben. At that time, the Respondent informed the court that he had not received the discovery requests or that he was unable to find them. The court ordered Mr. Canaan to provide the Respondent with an additional copy of the discovery requests. The court scheduled a hearing for October 23, 1998, and ordered that the Respondent make the necessary arrangements for the telephone conference.

"8. On August 7, 1998, Mr. Canaan resent the discovery requests to Respondent. After receiving no response to the requests, on October 8, 1998, Mr. Canaan filed a second motion to compel discovery. This time, Mr. Canaan's motion was accompanied by a request for sanctions. The Respondent failed to file a response to the motion to compel and the request for sanctions.

"9. The Respondent failed to set up the telephone conference for October 23, 1998, as ordered on August 5, 1998. The court subsequently tried to reach the Respondent several times and left messages for him but the Respondent failed to ever return the court's telephone calls.

"10. On November 30, 1998, Mr. Canaan filed a motion for default judgment. The Respondent failed to file a response to the motion for default judgment.

"11. On October 12, 1999, the court scheduled a case management conference for November 5, 1999. Again, the court called upon the Respondent to make the necessary arrangements for the telephone conference hearing.

"12. The Respondent made the necessary arrangements, and the court held a case management telephone conference on November 5, 1999. At that time, the Respondent told the court that he did not recall receiving the requests for discovery, that the Respondent's file regarding Mr. Canaan's law suits had been misplaced, and that he had not been able to obtain a copy of the official court file. The court sustained Mr. Canaan's motion for sanctions, ordered the defendants to make full and complete responses to the requests for discovery, and ordered the Respondent to provide a copy of the court order to each of the named defendants by December 5, 1999, so that they would be able to make informed decisions about the case, including whether they needed to hire separate counsel. The court also ordered another telephone conference hearing for January 7, 2000.

"13. The Respondent filed for an extension of time to respond to the discovery requests. The Respondent's request for an extension of time was granted and the Respondent was given until December 27, 1999, to provide responses to discovery. The Respondent failed to provide the requested responses to discovery. Additionally, the Respondent failed to make a second request for additional time to provide responses to discovery.

"14. In letters dated November 18, 1999, but not received until the middle of January, 2000, the defendants were advised that they needed to provide responses to the discovery requests by December 5, 1999. Enclosed with the cover letter were copies of the discovery requests. The Respondent did not include a copy of the motion to compel discovery, a copy of the order compelling discovery, a copy of the motion for sanctions, or a copy of the motion for default judgment. Additionally, the Respondent did not even advise his clients of the existence of the motion to compel discovery, the order compelling discovery, the motion for sanctions, or the motion for default judgment.

"15. After receiving the Respondent's letter dated November 18, 1999, Mr. Bartee and Mr. Bush telephoned the Respondent at the Attorney General's office. When they were unable to reach the Respondent, Mr. Bartee and Mr. Bush left several messages. The Respondent failed to return the telephone calls.

"16. Because the Respondent fell ill just when the hearing scheduled for January 7, 2000, was to begin, the telephone conference hearing was continued to January 20, 2000. The hearing was held on January 20, 2000. At that time, the Respondent reported that the named defendants had not responded to any of the outstanding discovery requests. The Respondent also reported that he forwarded a copy of the court's order granting Mr. Canaan's request for sanctions to the defendants.

"17. The Respondent filed a brief with the court regarding the applicable standards to consider when determining the appropriate sanction.

"18. On February 14, 2000, the court entered an order of default judgment, as to liability, against all defendants. The order found the attorney defendants liable for legal malpractice. On that same day, Mr. Campbell, Senior Deputy Attorney General and the Respondent's supervisor, learned that default judgment had been entered against the Respondent's clients. Mr. Campbell met with the Respondent, and accepted the Respondent's resignation.

"19. On November 20, 2000, the court overruled the defendants' joint motion to set aside the default judgment. Additionally, the court denied the defendant's request to withdraw admissions made by virtue of their lack of response, pursuant to K.S.A. 60-236.

"20. The named defendants took interlocutory appeals to the Kansas Court of Appeals. On its own motion, the Kansas Supreme Court transferred the case from the Kansas Court of Appeals to the Kansas Supreme Court. The cases are now pending before the Kansas Supreme Court.

## "CONCLUSIONS OF LAW

"Based upon the above findings of fact, the Hearing Panel makes the following conclusions of law:

"1. In the Formal Complaint, the Deputy Disciplinary Administrator alleged that the Respondent violated KRPC 1.3, KRPC 1.4(a), and KRPC 3.4(d). Additionally, at the hearing on the Formal Complaint, the Deputy Disciplinary Administrator argued that the Respondent also violated KRPC 8.4(d). The law, regarding when violations not stated in the Formal Complaint can be found by the Hearing Panel, was thoroughly examined in *State v. Caenen*, 235 Kan. 451, 681 P.2d 639 (1984), as follows:

'Supreme Court Rule 211(b) (232 Kan. clxvi), requires the formal complaint in a disciplinary proceeding to be sufficiently clear and specific to inform the respondent of the alleged misconduct.

'The seminal decision regarding the applicability of the due process clause to lawyer disciplinary proceedings is found in *In re Ruffalo*, 390 U.S. 544, *reh. denied* 391 U.S. 961 (1968). There the United States Supreme Court held that a lawyer charged with misconduct in lawyer disciplinary proceedings is entitled to procedural due process, and that due process includes fair notice of the charges sufficient to inform and provide a meaningful opportunity for explanation and defense.

'Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses. . . . Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged, but the state is not required to plead specific rules, since it is the factual allegations against which the attorney must defend. . . . However, if specific rules are pled, the state is thereafter limited to such specific offenses. . . .

'Subsequent to the *Ruffalo* decision, the due process requirements in lawyer disciplinary proceedings have been given exhaustive treatment by this court. In *State v. Turner*, 217 Kan. 574, 538 P.2d 966 (1975), 87 A.L.R.3d 337, the court summarized prior Kansas and federal precedent on the question, including *Ruffalo*, and held in accordance with established precedent that the state need not set forth in its complaint the specific disciplinary rules allegedly violated . . . , nor is it required to plead specific allegations of misconduct. . . . What is required was simply stated therein:

" 'We must conclude that where the facts in connection with the charge are clearly set out in the complaint a respondent is put on notice as to what ethical violations may arise therefrom. . . .

. . . .

" 'It is not incumbent on the board to notify the respondent of charges of specific acts of misconduct as long as proper notice is given of the basic factual situation out of which the charges might result.' " 235 Kan. at 458-59 (citations omitted).'

"Thus, in this case, the Hearing Panel may find a violation of KRPC 8.4(d) only if the Formal Complaint alleges facts that would support such a finding. In this case, the Formal Complaint contains sufficient facts to support the finding that the Respondent violated KRPC 8.4(d). Accordingly, the Hearing Panel may properly consider whether the Respondent violated KRPC 8.4(d).

"2. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. Because the Respondent failed to act with reasonable diligence and promptness in representing the defendants, the Respondent violated KRPC 1.3. As a result of the Respondent's lack of diligence, judgment was entered against the defendants.

"3. KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

*Id.* The Respondent failed to contact the defendants in preparation of the answers, the Respondent failed to timely notify the defendants of the discovery requests even when specifically ordered to do so by the court, and the Respondent failed to advise his clients of the existence of the motion to compel discovery, the order compelling discovery, the motion for sanctions, or the motion for default judg-

ment. Because the Respondent failed to even attempt to keep the defendants informed about the status of their cases, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"4.   Lawyers are required to be fair to the opposing party and counsel. *See* KRPC 3.4(d). Specifically,

'[a] lawyer shall not . . . in pretrial procedure, . . . fail to make [a] reasonably diligent effort to comply with a legally proper discovery request by an opposing party.'

*Id.* In this case, the Respondent failed to make any effort to provide the requested documents and answers to the interrogatories even when so ordered by the court. As such, the Hearing Panel concludes that the Respondent violated KRPC 3.4(d).

"5.   KRPC 8.4(d) provides that '[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' *Id.* The Respondent violated KRPC 8.4(d) when he failed to object to or assert as a defense the lack of proper service on Mr. Jernigan, when he failed to appear in court, when he failed to comply with·the orders of the court, and when he failed to provide requested discovery. The Hearing Panel concludes that the Respondent violated KRPC 8.4(d).

## "RECOMMENDATIONS

"In making this recommendations for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty violated.* The Respondent violated his duty to the legal system to assist in the administration of justice. Additionally, the Respondent violated his duty to his clients to provide diligent representation and appropriate communication.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* Because of the Respondent's misconduct, Mr. Canaan's lawsuits have been delayed for a significant amount of time. As such, Mr. Canaan suffered actual injury as the result of the Respondent's misconduct. Furthermore, the defendants named in Mr. Canaan's lawsuits suffered actual injury when judgment, as to liability, was entered against them. The entry of judgment against them caused immeasurable stress and aggravation to the defendants as well as potential damage to their professional reputations, as the attorney defendants were found liable for malpractice. The Respondent's misconduct also forced the defendants to retain private counsel to provide representation in the ongoing proceedings. According to Mr. Campbell, the state of Kansas will be paying the attorney fees incurred by private counsel. As such, the named defendants and the state of Kansas suffered actual injury as a result of the Respondent's misconduct.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be

imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Pattern of Misconduct. The Respondent repeatedly failed to follow orders of the court. The Respondent failed to communicate with his clients over a period of two years. The Respondent failed to respond to requests for discovery on numerous occasions. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 1.4(a), KRPC 3.4(d), and KRPC 8.4(d). As such, the Respondent engaged in multiple offenses.

"Vulnerability of Victims. At the times the misconduct in this case occurred, the Respondent had been handling inmate lawsuits for the Attorney General's office for between two and four years. As a result, the Respondent was aware that inmate cases are often dismissed prior to discovery, that defendants generally do not actively participate in the defense of the actions, and that findings of liability for legal malpractice on the part of attorney defendants are rare. In both of Mr. Canaan's cases, the defendants were not actively involved in the preparation of the answers. The Respondent filed answers on behalf of the defendants, without any input from the defendants.

"Mr. Bartee had previously been sued by inmates in his capacity as a public defender. On each of those occasions, the cases filed against Mr. Bartee were dismissed prior to discovery. Mr. Bartee had no reason to believe that this case would be any different. Mr. Bartee trusted that this case had taken the same course as the previous inmate law suits in which he was involved.

"Mr. Bush had not been sued by an inmate prior to Mr. Canaan's suits. However, Mr. Bush discussed this case with co-workers. He was assured by his co-workers that the inmate law suits were typically dismissed without any participation by the named defendants. Mr. Bush assumed that the Respondent had taken care of the case, and that the matter had been dismissed.

"Finally, Ms. Curtis, testified that when working as a public defender for the state of Missouri, she had been sued on two or three occasions by inmates. On each of those occasions, Ms. Curtis provided the pleadings to the attorneys representing her, and then heard nothing else. With regard to Mr. Canaan's law suits, Ms. Curtis relied on the Respondent, and assumed that he had resolved the cases in her favor.

"The Respondent knew or reasonably should have known that based upon the typical nature of inmate law suits, that the defendants would not actively follow these cases, and would therefore be vulnerable to the type of misconduct committed herein. Certainly, the Respondent took no action that would lead the named defendants to believe that Mr. Canaan's law suits would require additional attention. The Hearing Panel concludes that the victims were vulnerable because of the nature of the law suits.

"Substantial Experience in the Practice of Law. The Respondent was admitted to the practice of law in the state of Kansas on April 15, 1987. At the time the

misconduct occurred, the Respondent had been practicing law for a period of between eleven and thirteen years.

"Failure to Rectify the Consequences of His Actions. The Respondent has made no attempt to rectify the situation created by his misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Absence of Dishonest or Selfish Motive. There is no evidence that the Respondent's misconduct was motivated by dishonesty or selfishness.

"Previous Good Character and Reputation. The letters submitted by the Respondent from a friend and a current supervisor as well as the testimony from Mr. Campbell indicate that the Respondent enjoys a good reputation.

Arguing that the facts in *In re Druten*, 267 Kan. 790, 982 P.2d 978 (1999), are similar to the facts in this case, the Respondent recommended that, like Druten, he should be publicly censured. However, a '[c]omparison of past sanctions imposed in disciplinary cases is of little guidance. Each case is evaluated individually in light of its particular facts and circumstances and in light of protecting the public.' *In re Jones*, 252 Kan. 236, 239, 843 P.2d 709 (1992).

Additionally, *Druten* is factually dissimilar to the case at hand. In *Druten*, the Respondent was retained to provide representation to his client in various collection matters. Before obtaining the files, the statute of limitations had expired as to some of the matters. Druten's client told the Respondent that he would provide false testimony to avoid statute of limitations problems. Then, Druten misrepresented to his client the status of the cases, falsely indicating that some of the cases had been filed and were scheduled for settlement conferences. Because his firm carried professional liability insurance, Druten's client received a settlement of approximately $100,000. Finally, Druten self-reported the violation to the Office of the Disciplinary Administrator. *Id.* at 979-80.

The factual differences are three-fold: The client in the *Druten* case had unclean hands; the clients in this case did nothing improper. Because Druten had professional liability insurance, his client was compensated for any injury that Druten's misconduct caused. In this case, the Respondent took no action even to attempt to rectify the situation that his misconduct caused. Finally, Druten self-reported the violation to the Office of the Disciplinary Administrator. The Respondent's misconduct, in this case, was reported by Mr. Campbell, Senior Deputy Attorney General.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following standards:

'Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference with a legal proceeding.'

Standard 6.22. The Respondent knowingly violated Judge Leben's order and interfered with the progression of Mr. Canaan's law suits.

'Suspension is generally appropriate when:
(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

Standard 4.42. The Respondent knowingly and repeatedly failed to obtain responses to the requests for discovery and caused injury to his clients.

"Based upon the above findings of fact, conclusions of law, and standards, the Hearing Panel unanimously recommends that Respondent be suspended from the practice of law for a period of one year. Additionally, the Hearing Panel recommends that the suspension be effective as of the date of the hearing held on this matter, May 15, 2001. Finally, the Hearing Panel recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219. At the reinstatement hearing, the Respondent should be required to establish that he has received the appropriate professional help to enable him to prevent a repeat of the misconduct present in this case."

A finding of attorney misconduct requires proof "by clear and convincing evidence." Supreme Court Rule 211(f) (2000 Kan. Ct. R. Annot. 250). The panel's findings of fact are supported by clear and convincing evidence and, with the conclusions of law, are adopted as the findings of this court.

IT IS THEREFORE ORDERED that James W. Coder is hereby suspended from the practice of law in the State of Kansas for a period of 1 year from the date of this opinion.

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rules 218 (2000 Kan. Ct. R. Annot. 266) and 219 (2000 Kan. Ct. R. Annot. 274).

IT IS FURTHER ORDERED that the costs of the proceeding be assessed to the respondent and that this opinion be published in the official Kansas Reports.