566 S.E.2d 245

## LAWYER DISCIPLINARY BOARD, Complainant

v.

## Timothy N. BARBER, an Active Member of the West Virginia State Bar, Respondent

No. 26519.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 8, 2002.

Original Opinion Decided April 11, 2002.

Modified Opinion Decided June 7, 2002.

law for six months and be required to petition for reinstatement;[2] that he be required to make restitution of the loan amount plus interest set forth in the promissory note as a mandatory condition of reinstatement even if six months have passed; and that he be ordered to reimburse the Board for the costs of the disciplinary proceeding. Mr. Barber objects to the recommendation.

Having reviewed the recommendation, all matters of record, and the briefs and argument of counsel, we find that Mr. Barber violated the Rules of Professional Conduct. Thus, for the reasons set forth below, the sanctions recommended by the Board as modified are hereby imposed.[3]

## I. Facts

In August 1994, Mr. Barber was retained by Edward Helm to represent him in his divorce. In addition to the divorce, Mr. Barber also represented Mr. Helm on other legal matters, some of which involved Mr. Helm's business. Mr. Barber was Mr. Helm's attorney until June 25, 1997.

About a month prior to Mr. Helm's final divorce hearing in April 1996, Mr. Barber asked Mr. Helm to retain him to represent his new business. Mr. Barber suggested a $40,000 retainer fee. Mr. Helm declined stating that he "did not have that kind of money" because he was trying to get his new business started. Mr. Barber then told Mr. Helm that he was in trouble with the Internal Revenue Service and that he needed $100,000. He asked Mr. Helm to lend him the money and promised he would repay the loan in thirty days.

Amie L. Johnson, Esq., Lawyer Disciplinary Counsel, Charleston, West Virginia, Attorney for Complainant.

James B. McIntyre, Esq., McIntyre & Collias, Charleston, West Virginia, Attorney for Respondent.

## PER CURIAM:

This disciplinary proceeding was instituted by the complainant, the Lawyer Disciplinary Board (hereinafter "the Board"), against the respondent, Timothy N. Barber, an active member of the West Virginia State Bar,[1] on July 19, 1999. Mr. Barber was charged with violating Rules 1.8(a)(2) and (3), 8.1(b), and 8.4(c) of the West Virginia Rules of Professional Conduct after he solicited and obtained a loan from a client. The Hearing Panel Subcommittee (hereinafter "Subcommittee") of the Board has recommended that Mr. Barber be suspended from the practice of

1. Mr. Barber was admitted to the practice of law in West Virginia on June 9, 1962.

2. Pursuant to Rule 3.32(a) of the Rules of Lawyer Disciplinary Procedure,

A person whose license to practice law has been or shall be suspended in this State for a period of more than three months and who shall desire reinstatement of such license, shall file a verified petition in the Supreme Court of Appeals reciting what he or she shall have done in satisfaction of requirements as to restitution, conditions, or other acts incident to the suspension, by reason of which the lawyer believes he or she should be reinstated as a

member of the state bar and should have his or her license to practice law restored.

3. This Court originally issued an opinion in this case on April 11, 2002. However, because of certain events which occurred simultaneously with the filing of that opinion including the fact that Mr. Barber paid $92,000 in restitution on the same day that opinion was filed, this Court has determined that a modified opinion should be issued. This opinion only modifies the Court's decision with respect to the sanctions to be imposed upon Mr. Barber. The Court's findings and conclusions concerning Mr. Barber's violations of the Rules of Professional Conduct remain the same.

Mr. Helm agreed to lend Mr. Barber the money and wrote him a check for $100,000. In return, Mr. Barber gave Mr. Helm a document entitled "Promissory Note." The handwritten note stated that the $100,000 would be repaid in thirty days at 7.5 percent interest per annum. Mr. Barber did not give or offer any collateral or security interest for the loan, nor did he advise Mr. Helm to seek the advice of other legal counsel about the loan transaction.

Mr. Barber never repaid the loan. Mr. Helm asked Mr. Barber to repay the loan on several occasions and even enlisted the help of another attorney who was a mutual friend. Eventually, Mr. Barber revealed that he did not intend to repay the full loan amount but instead, was going to offset legal fees owed to him by Mr. Helm.[4]

On September 10, 1998, Mr. Helm filed an ethics complaint against Mr. Barber. On November 5, 1998, the Office of Disciplinary Counsel (hereinafter "ODC") forwarded the complaint to Mr. Barber and requested a response within ten days pursuant to Rule 2.5 of the Rules of Lawyer Disciplinary Procedure.[5] Mr. Barber failed to comply and a second letter was sent on December 2, 1998. Again, Mr. Barber never responded. The ODC then attempted to subpoena Mr. Barber to its office to provide a response, but was unsuccessful. Mr. Barber finally submitted a response to the ethics complaint on December 29, 1998.

The Board filed formal charges against Mr. Barber on July 19, 1999. The Subcommittee held a disciplinary hearing on March 20, 2001. Thereafter, the Subcommittee issued its report recommending Mr. Barber be suspended for six months; that he be required to make restitution of the loan amount plus interest set forth in the promissory note as a mandatory condition of reinstatement even if six months have passed; and that he reimburse the Board for the costs of the disciplinary proceeding. The Subcommittee recommended that the charge of violating

---

4. Mr. Barber contends that Mr. Helm owes him approximately $27,000 in legal fees.

5. In 1999, Rule 2.5 of the Rules of Lawyer Disciplinary Procedure was amended to provide that

Rule 8.4(c) be dismissed. Mr. Barber filed a timely objection to the recommendation.

## II. Standard of Review

"Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, effective July 1, 1994, requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syllabus Point 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). Although the Board makes recommendations to this Court regarding sanctions to be imposed upon an attorney for ethical violations, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985). Accordingly,

"'A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.' Syl. pt. 3, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994)." Syllabus Point 2, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995).

Syllabus Point 3, *Lawyer Disciplinary Bd. v. Cunningham*, 195 W.Va. 27, 464 S.E.2d 181 (1995).

## III. Discussion

### A. Statute of Limitations

Mr. Barber first argues that the statute of limitations set forth in Rule 2.14 of the

---

"[t]he respondent shall have twenty days after the date of the written notice to file a written response to the complaint."

Rules of Lawyer Disciplinary Procedure expired before Mr. Helm filed his complaint, and therefore, the charges against him should be dismissed. As discussed above, the loan transaction occurred on March 15, 1996, but Mr. Helm did not file his complaint until September 10, 1998. Rule 2.14 provides:

> Any complaint filed more than two years after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the Rules of Professional Conduct, shall be dismissed by the Investigative Panel.

Although the rule contains a discovery provision, Mr. Barber contends that it does not apply. He asserts that Mr. Helm filed the ethics complaint to get his money back and not because he discovered that the loan constituted an ethical violation.

Regardless of Mr. Helm's intent when he filed the complaint, it is undisputed that he did not know prior to August 1998 that Mr. Barber might have violated an ethical rule by soliciting and obtaining a loan from him. It is also undisputed that Mr. Helm did not know of the existence and function of the ODC until that time. Within two months of learning this information, Mr. Helm filed his complaint.

In *Lawyer Disciplinary Bd. v. Battistelli*, 206 W.Va. 197, 204, 523 S.E.2d 257, 264 (1999) (hereinafter *Battistelli II*), this Court found that an ethical complaint was timely filed even though more than two years had passed since the alleged misconduct because there was no evidence that the complainant either knew or reasonably should have known of the ethical violation until he consulted a different attorney. In that case, attorney Battistelli was also charged with violating Rule 1.8(a) by obtaining a loan from a client. The loan transaction occurred on March 4, 1993, and the client consulted another attorney in August 1993. The complaint was filed in May 1995.

In the present case, Mr. Helm filed his complaint with the ODC soon after he learned of the possible ethical violation. Therefore, we agree with the Subcommittee's finding that this disciplinary proceeding is not time-barred.[6]

### B. Rules 1.8(a)(2) and (3)

■ Mr. Barber was charged with violating Rules 1.8(a)(2) and (3) of the Rules of Professional Conduct which provide as follows:

> (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:
>
> . . . .
>
> (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and
>
> (3) the client consents in writing thereto.

The Board found that Mr. Barber violated Rule 1.8(a)(2) because he never gave Mr. Helm a reasonable opportunity to seek the independent advice of legal counsel. The evidence shows that Mr. Barber solicited and received the loan from Mr. Helm during a meeting scheduled to discuss Mr. Helm's divorce. Mr. Helm had no opportunity to speak with another attorney and relied solely upon the advice and counsel of Mr. Barber.

We agree with the Board's finding that Mr. Barber violated Rule 1.8(a)(2). Although Mr. Helm has testified that he did not want or need independent legal advice, Rule 1.8(a)(2) unequivocally states that the client must be given a reasonable opportunity to seek the advice of independent counsel. Clearly, Mr. Helm was not given such an opportunity.

■ With regard to Rule 1.8(a)(3), the Board found that Mr. Barber violated this rule by not having Mr. Helm consent in writing to the loan and to the conflict of

---

**6.** In its brief and during oral argument, the ODC urged this Court to extend the continuous representation doctrine set forth in Syllabus Point 6 of *Smith v. Stacy*, 198 W.Va. 498, 482 S.E.2d 115 (1996) to lawyer disciplinary proceedings and find that Mr. Helm's complaint was timely filed because Mr. Barber continued to represent him until at least June 25, 1997. Having found that the complaint in this case was timely filed pursuant to the discovery provision set forth in Rule 2.14 of the Rules of Lawyer Disciplinary Procedure, we need not address this issue.

interest. Again, we agree with the Board's findings. Contrary to Mr. Barber's assertions, Mr. Helm's signature on the loan check does not satisfy the requirements of Rule 8.1(a)(3).

■ In *Office of Disciplinary Counsel v. Battistelli*, 193 W.Va. 629, 637–38, 457 S.E.2d 652, 660–61 (1995) (hereinafter *Battistelli I*), this Court explained that "attorneys who enter into loan transactions with clients are 'held to a higher standard than that of the market place * * * [and their] conduct must measure up to the high standards required of a member of the bar even if [their] duties in a particular transaction do not involve the practice of law.'" (Citations omitted). Thus, this Court held in Syllabus Point 6 of *Battistelli I* that "[a] lawyer who engages in a loan transaction with his or her client must, at a minimum, assure that the arrangement satisfies West Virginia Rule of Professional Conduct 8.1(a)(1) to (3)." Clearly, Mr. Barber did not assure that his arrangement satisfied Rule 8.1(a)(2) and (3).

## C. Rule 1.8(a)(1) and Due Process

■ In addition to finding that Mr. Barber violated Rules 1.8(a)(2) and (3), the Board also found that Mr. Barber violated Rule 1.8(a)(1). Mr. Barber claims that the Board erred in making this finding for two reasons. First, he contends that the Board denied him due process by considering whether he violated Rule 1.8(a)(1) because there was no such allegation in the Statement of Charges. Secondly, he claims that the evidence did not support the Board's finding that he violated this rule. Rule 1.8(a)(1) provides:

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client[.]

Mr. Barber claims that because he was never given notice that he was charged with

violating Rule 1.8(a)(1), he did not have the opportunity to prepare a defense to this allegation and, thus, he was denied due process. In support of his argument, Mr. Barber relies upon *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), a case in which the Supreme Court found that an attorney who was disbarred based on a new charge added during a disciplinary hearing had been deprived of due process.

In *Ruffalo*, a trial attorney who handled many Federal Employers' Liability Act (hereinafter "FELA") cases was charged with several violations of disciplinary rules. The charges included an allegation that Ruffalo used a part-time employee, Michael Orlando, to solicit clients on his behalf. During the course of the disciplinary proceeding, it was revealed that Orlando was also employed by the Baltimore & Ohio Railroad Co., one of the railroads against whom Ruffalo had brought suit. Orlando denied soliciting clients for Ruffalo, but admitted that he had investigated FELA cases for him including some cases in which the Baltimore & Ohio Railroad Co. was a defendant. Immediately after this testimony, the charges against Ruffalo were amended to include an allegation based on his hiring of Orlando to investigate his employer. Ruffalo's eventual disbarment was based solely upon this charge. On appeal, the Supreme Court found that Ruffalo had been denied due process because he "had no notice that his employment of Orlando would be considered a disbarment offense until after both he and Orlando had testified at length on all the material facts pertaining to this phase of the case." 390 U.S. at 550–51, 88 S.Ct. at 1226, 20 L.Ed.2d at 122.

The ODC argues that the *Ruffalo* case is distinguishable from the matter *sub judice* because the attorney's disbarment in that case was ultimately based on conduct completely unrelated to the original charges. The ODC maintains that the Board's finding that Mr. Barber violated Rule 1.8(a)(1) did not deprive him of due process because that violation was not an independent ground for recommending discipline. We agree. In fact, other jurisdictions which have addressed this issue have reached the same conclusion.

For instance, in *The Florida Bar v. Fredericks,* 731 So.2d 1249 (Fla.1999), the Supreme Court of Florida determined that no due process violation occurred when an attorney was found to have violated Florida's professional conduct rules pertaining to diligence and communication with clients even though violation of those rules had not been alleged in the complaint against him. The attorney had only been charged with violating Florida's professional conduct rule regarding dishonesty, fraud, deceit or misrepresentation for lying to his client for several years about filing an appeal. The Court explained:

> Clearly, *Ruffalo* is distinguishable from ... the instant case in a very important respect. The conduct in *Ruffalo* upon which the attorney's disbarment was ultimately based was completely unrelated to the original charge and was actually the basis of his defense to the original charge. Thus, the attorney was completely unaware that the uncharged conduct was to be questioned and had been, in essence, trapped by his defense to the original charge. Here ... although the specific conduct or specific rule violation at issue was not alleged in the original bar complaint, it was related to or was within the scope of the conduct and rule violations specifically charged.

731 So.2d at 1253–54.

The Supreme Court of Kansas reached the same conclusion in *In the Matter of James W. Coder,* 35 P.3d 853 (Kan.2001), and adopted a recommendation finding that an attorney had violated the Kansas professional conduct rule relating to engaging in conduct prejudicial to the administration of justice even though the complaint filed against the attorney did not include this charge. The initial charges against the attorney only contained allegations regarding the Kansas Rules of Professional Conduct pertaining to diligence, communication, and failure to make a reasonably diligent effort to comply with discovery. The Supreme Court of Kansas stated:

> Decisions subsequent to *Ruffalo* have refined the concept of due process as it applies to lawyer disciplinary hearings, and

suggest that the notice to be provided be more in the nature of that provided in civil cases. The weight of authority appears to be that, unlike due process provided in criminal actions, there are no stringent or technical requirements in setting forth allegations or descriptions of alleged offenses .... Due process requires only that the charges must be sufficiently clear and specific to inform the attorney of the misconduct charged[.]

35 P.3d at 856.

Given the fact that Mr. Barber was charged with violating Rule 1.8(a)(2) and (3), and, therefore, was on notice that the manner in which he solicited the loan from Mr. Helm was the basis for the charges against him, we do not find that the Board violated Mr. Barber's due process rights by considering whether he also violated Rule 1.8(a)(1). This case is clearly distinguishable from *Ruffalo* as the Board's findings with regard to Rule 1.8(a)(1) were not the sole basis for the recommendation that Mr. Barber be disciplined.

■■■ The Board concluded that Mr. Barber violated Rule 1.8(a)(1) because despite the fact that a large amount of money was involved, Mr. Barber neither gave nor offered Mr. Helm any security interest or collateral for the loan, nor did he advise Mr. Helm of the benefits of a perfected security interest or collateral. In addition, the Board determined that the loan was not fair or reasonable to Mr. Helm because he needed the money to start his business, and Mr. Barber was aware of this fact as the result of confidential attorney-client information he obtained while representing Mr. Helm. Finally, the Board noted that Mr. Barber had solicited the loan during an evening meeting which was scheduled to discuss Mr. Helm's divorce. Based upon this evidence, we agree with the Board's finding that Mr. Barber violated Rule 1.8(a)(1).

### D. Rule 8.1(b)

■■■ Mr. Barber was also charged with violating Rule 8.1(b) of the Rules of Professional Conduct which provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

The Board found that Mr. Barber violated this rule because he failed to timely respond to the complaint in this disciplinary proceeding. The Board's finding was based on Mr. Barber's admission during the disciplinary hearing that he had failed to timely respond to the charges. The Board noted that Mr. Barber was admonished on two prior occasions when he failed to respond to ethics complaints filed against him.

In Syllabus Point 1 of *Committee on Legal Ethics of the West Virginia State Bar v. Martin,* 187 W.Va. 340, 419 S.E.2d 4 (1992), this Court held that:

An attorney violates West Virginia Rule of Professional Conduct 8.1(b) by failing to respond to requests of the West Virginia State Bar concerning allegations in a disciplinary complaint. Such a violation is not contingent upon the issuance of a subpoena for the attorney, but can result from the mere failure to respond to a request for information by the Bar in connection with an investigation of an ethics complaint.

Thus, we agree with the Board's finding that Mr. Barber violated Rule 8.1(b).

### E. Rule 8.4(c)

Mr. Barber was also charged with violating Rule 8.4(c) of the Rules of Professional Conduct which provides:

It is professional misconduct for a lawyer to:

. . . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. . . .

The Board concluded that the evidence did not support a finding that Mr. Barber violated this rule. In particular, the Board found that the ODC had failed to present clear and convincing evidence that Mr. Barber had intentionally committed acts of "dishonesty, fraud, deceit or misrepresentation." Having reviewed the record in this proceeding, we likewise find that the evidence does not support a finding that Mr. Barber violated Rule 8.4(c).

### F. Sanctions

Having found that Mr. Barber violated Rules 1.8(a)(1)(2) and (3) and 8.1(b), we must determine the appropriate sanctions. In Syllabus Point 4 of *Battistelli II,* this Court observed:

"Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors." ' Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998).

The Board has recommended that Mr. Barber be suspended from the practice of law for six months; that he be required to make restitution of the loan amount plus interest as set forth in the promissory note given to Mr. Helm as a mandatory condition of reinstatement even if six months have passed; and that he be ordered to reimburse the Board for the costs of this disciplinary proceeding.

As discussed above, the evidence clearly establishes that Mr. Barber violated a duty owed to Mr. Helm. At the same time, the evidence did not establish that Mr. Barber

set out to deceive Mr. Helm with regard to the terms of the loan. Moreover, there is no evidence that Mr. Barber engaged in fraudulent conduct toward his client. In light of these facts, this Court initially determined that Mr. Barber should be suspended from the practice of law for up to six months as recommended by the Board. However, this Court also indicated that Mr. Barber would be permitted to seek reinstatement of his license at any time during the six-month suspension provided that he had made restitution to Mr. Helm. With regard to the amount of restitution owed to Mr. Helm, this Court determined that Mr. Barber would have to satisfy any judgment awarded to Mr. Helm in the civil proceeding he instituted to recover the money he loaned Mr. Barber.

On the same date this Court's initial opinion was released, Mr. Barber paid Mr. Helm $92,000.00 and thereby made restitution to him. A few days later, Mr. Barber also paid the Board $1,402.08 which satisfied the costs of this proceeding. As discussed above, this Court's initial opinion contemplated that Mr. Barber would be suspended from the practice of law for some period of time, said time period to be determined in part by whether and when Mr. Barber made restitution. In light of the fact that Mr. Barber has now made prompt restitution to Mr. Helm, this Court believes that Mr. Barber should be suspended from the practice of law for sixty days for his violation of Rules 1.8(a)(1)(2) and (3) and 8.1(b). At the end of the sixty-day suspension, Mr. Barber's license shall be automatically reinstated. Mr. Barber is not required to petition for reinstatement of his license pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure. In addition, this Court has determined that Mr. Barber should be refunded the costs of the proceeding which he paid to the Board. Although the initial opinion was unclear in that regard, it was this Court's determination at the outset that Mr. Barber would not be required to pay the costs of this proceeding.

### IV. Conclusion

Accordingly, for the reasons set forth above, this Court finds that Mr. Barber has violated Rules 1.8(a)(1)(2) and (3) and 8.1(b) of the Rules of Professional Conduct and hereby orders that he be suspended from the practice of law for sixty days.

Sixty-day suspension.