617 S.E.2d 484

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**L. Thomas LAKIN, not licensed with The West Virginia State Bar, Respondent.**

**No. 30559.**

Supreme Court of Appeals of West Virginia.

Submitted: March 22, 2005.

Filed: June 24, 2005.

---

W. Henry Jernigan, Jr., Esq., Special Lawyer Disciplinary Counsel, Brace R. Mullett, Esq., Special Lawyer Disciplinary Counsel, Dinsmore & Shohl, LLP, Charleston, for the Complainant.

James D. McQueen, Jr., Esq., Kelly C. Morgan, Esq., Todd M. Sponseller, Esq., McQueen, Harmon & Murphy, L.C., Charleston, for the Respondent.

The Opinion of the Court was delivered PER CURIAM.

Justice STARCHER concurs in part, dissents in part and reserves the right to file a separate opinion.

PER CURIAM.

This lawyer disciplinary matter is before this Court upon the recommendation of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board that the respondent, L. Thomas Lakin, be prohibited from practicing law in this State for a period of twelve months, subject to limited excep-

tions, and that his law firm, known as the Lakin Law Firm, be prohibited from engaging in certain activities in this State which would constitute violations of the West Virginia Rules of Professional Conduct. The recommendation was filed with this Court on October 13, 2004, and includes and adopts an agreement on sanctions entered into by the respondent and the Special Lawyer Disciplinary Counsel.

The recommendation of the Hearing Panel Subcommittee arose from various complaints and a formal Statement of Charges to the effect that the respondent, a lawyer in the State of Illinois, violated the Rules of Professional Conduct by soliciting individuals in West Virginia with personal injury claims to become clients of the Lakin Law Firm. At that time, neither the respondent nor any member of the Lakin Law Firm were licensed to practice law in this State.

This Court has before it the recommendation of the Hearing Panel Subcommittee, all matters of record and the briefs and argument of counsel. Upon a review by this Court, *de novo*, and for the reasons stated herein, this Court adopts the recommendation of the Hearing Panel Subcommittee, including the agreement on sanctions entered into by the parties.

## I.

### Factual and Procedural Background

The respondent, L. Thomas Lakin, a practicing lawyer for approximately thirty-five years, was the owner and manager of the Lakin Law Firm, located in Wood River, Illinois. During the period in question, the Firm employed approximately ten lawyers. Currently, the Lakin Law Firm employs about twenty lawyers, and ownership has been transferred to the respondent's son, also a lawyer.

1. Rule 2.10. of the West Virginia Rules of Lawyer Disciplinary Procedure states in part that "the formal charge shall be filed by the Investigative Panel with the Clerk of the Supreme Court of Appeals."

2. The ethics complaints filed against respondent Lakin which preceded the filing of the formal Statement of Charges are not part of the record

On May 8, 2002, the Investigative Panel of the Lawyer Disciplinary Board filed a formal Statement of Charges with this Court alleging that the respondent violated the Rules of Professional Conduct by soliciting individuals in West Virginia with personal injury claims to become clients of the Lakin Law Firm.[1] Specifically, the Statement of Charges, consisting of three Counts, alleged that West Virginia residents Kevin James Berry and Denver Copley were so solicited and that such activity constituted a pattern and practice of improper solicitation of residents of this State for legal services.

With regard to Count I, Kevin James Berry, a resident of Kenova, West Virginia, had a personal injury claim arising from a July 1997 bridge construction accident. Berry was represented in the claim by Menis Ketchum, a lawyer in Huntington, West Virginia. Soon after the retention of Ketchum, Al Richter and an individual named Gentry appeared at the Berry residence. Neither of the two men were previously known to Berry. Gentry was the stepson of one of Berry's co-workers, and, according to Disciplinary Counsel, Richter, a resident of the State of Pennsylvania, was a former client and *de facto* agent of the Lakin Law Firm. Although Berry told them that Ketchum was representing him, Richter, as alleged by Disciplinary Counsel, told Berry that Ketchum would "sell him out" and that Berry could get more money from the accident if he hired the Lakin Law Firm. Berry also received a telephone call from Howard Pederson, the chief investigator for the Lakin Law Firm, who allegedly attempted to solicit him as a client for the Firm. Berry declined the offers of Richter and Pederson and continued to be represented by Ketchum.[2]

According to the Investigative Panel, the above actions concerning Berry violated the following provisions of the Rules of Professional Conduct: Rule 7.1., prohibiting a law-

before this Court. However, the testimony elicited during the hearing before the Hearing Panel Subcommittee suggests that Ketchum filed the complaint alleging solicitation with regard to his client, Kevin James Berry, and that Denver Copley and his wife Gladys filed their own complaint against the respondent, alleging solicitation.

yer from making false communications about his or her services, such as by creating unjustified expectations about the results to be achieved; Rule 7.2.(c), stating that a lawyer shall not give anything of value to a person for recommending the lawyer's services; Rule 7.3.(a) and (b), prohibiting a lawyer from soliciting a prospective client for pecuniary gain; Rule 7.3.(c), indicating that solicitation is improper where a prospective client, already represented by a lawyer, is known to not be in need of legal services; Rule 8.4.(a), prohibiting violation of the Rules of Professional Conduct through the acts of another; and Rule 8.4.(c), stating that it is professional misconduct for a lawyer to engage in dishonesty, fraud, deceit or misrepresentation.

With regard to Count II of the Statement of Charges, Denver Copley, a resident of Williamson, West Virginia, and former railroad employee, had a personal injury claim arising from an October 1997 train accident. In January 1998, Copley retained Menis Ketchum to represent him in the claim. Thereafter, Copley began receiving numerous telephone calls from fellow employee, Colin Kelley, who, according to Disciplinary Counsel, was a former client and *de facto* agent of the Lakin Law Firm and who attempted to solicit Copley upon the Firm's behalf. In September 1998, Kelley arranged a meeting wherein Copley met with Kelley and attorneys Brad Lakin and Charles Armbruster of the Lakin Law Firm at Copley's home. The testimony before the Hearing Panel Subcommittee indicates that, at the time of the meeting, Kelley was aware that Copley had already retained counsel with regard to the accident. Moreover, Copley testified before the Subcommittee that he probably told Brad Lakin and Charles Armbruster during the meeting that he was already represented by counsel. Some weeks later, the respondent and Kelley went to Copley's home, but Copley would not answer the door. Copley continued to be represented by Ketchum.

According to the Investigative Panel, the above actions concerning Copley violated the following provisions of the Rules of Profes-

sional Conduct: Rule 7.2.(c), stating that a lawyer shall not give anything of value to a person for recommending the lawyer's services; Rule 7.3.(a) and (b), prohibiting a lawyer from soliciting a prospective client for pecuniary gain; Rule 7.3.(c), indicating that solicitation is improper where a prospective client, already represented by a lawyer, is known to not be in need of legal services; and Rule 8.4.(a), prohibiting violation of the Rules of Professional Conduct through the acts of another.

Count III of the Statement of Charges states: "The foregoing actions on the part of the Lakin Law Firm, L. Thomas Lakin and the attorney members and employees of that firm reflect a pattern and practice of improper solicitation of ... residents of the State of West Virginia, all in violation of the West Virginia Rules of Professional Conduct."

In response to the Statement of Charges, the respondent denied that he had engaged in solicitation activities in violation of the Rules of Professional Conduct. Emphasizing that he had never previously been charged in any jurisdiction with a legal ethics violation, the respondent asserted that neither Al Richter nor Colin Kelley had been compensated or authorized by anyone to solicit clients upon behalf of the Lakin Law Firm. According to the respondent, both Richter and Kelley were satisfied clients of the Firm who may have been overzealous in their communications with Kevin James Berry and Denver Copley. Richter was particularly described by the respondent as a "crusader" with regard to the type of accident suffered by Berry. Moreover, although Berry was also contacted by Howard Pederson, the chief investigator of the Lakin Law Firm, the respondent asserted that Pederson made the call in the course of an investigation upon behalf of certain clients of the Firm who were also injured in that accident and not for purposes of solicitation.

In June 2004, a two-day evidentiary hearing was conducted before the Hearing Panel Subcommittee of the Lawyer Disciplinary Board.[3] During the hearing, the Subcommittee received a written agreement on sanc-

---

**3.** Under Rule 3.3. of the Rules of Lawyer Disciplinary Procedure, hearings on formal charges are ordinarily conducted by the Hearing Panel Subcommittee of the Lawyer Disciplinary Board.

tions entered into by the respondent and the Special Lawyer Disciplinary Counsel. The agreement provided as follows:

A. Respondent [Lakin] shall not practice before the bar of any court of the State of West Virginia, on a *pro hac vice* basis or otherwise, for a period of twelve months from the date of the adoption of these recommendations by the West Virginia Supreme Court of Appeals, excluding therefrom only those cases in which he has already been admitted *pro hac vice* and is actively representing the interests of a party to such case.

B. Respondent shall not in any way, whether on an advisory basis or otherwise, involve himself with or in any case now pending or which may hereafter be brought before any court of the State of West Virginia for a period of twelve months from the date of the adoption of these recommendations by the West Virginia Supreme Court of Appeals, excluding therefrom only those cases in which he has already been admitted *pro hac vice* and is actively representing the interests of a party to such case.

C. Respondent and his law form shall not, either directly or through the services of third parties, engage in or permit his employees or agents to engage in the following conduct within the State of West Virginia:

(i) Making false or misleading communications about a lawyer or his services;

(ii) Providing anything of value to a person for recommending Respondent's services;

(iii) Soliciting for pecuniary gain either in-person or by telephone professional employment from a prospective client with whom the Respondent has no family or prior professional relationship;

(iv) Soliciting professional employment for or on behalf of the Respondent when the prospective client has made known to the Respondent or his employees or agents a desire not to be solicited or the solicitation involves coercion, duress or harassment; and

(v.) Otherwise violating the West Virginia Rules of Professional Conduct.

On October 13, 2004, the Hearing Panel Subcommittee filed its recommended decision with this Court.[4] The Subcommittee's recommendation included and adopted the above agreement on sanctions.

## II.

### Discussion

■ In *Committee on Legal Ethics v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court set forth the standard of review in lawyer disciplinary cases. Syllabus point 3 of *McCorkle* states:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative and substantial evidence on the whole record.

Syl. pt. 3, *Lawyer Disciplinary Board v. Barber,* 211 W.Va. 358, 566 S.E.2d 245 (2002); syl. pt. 2, *Lawyer Disciplinary Board v. Turgeon,* 210 W.Va. 181, 557 S.E.2d 235 (2000); syl. pt. 1, *Lawyer Disciplinary Board v. Farber,* 200 W.Va. 185, 488 S.E.2d 460 (1997).

The above standard of review is consistent with this Court's ultimate authority with regard to legal ethics matters in this State. As syllabus point 3 of *Committee on Legal Ethics v. Blair,* 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 783 (1985) holds: "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions

---

4. Rule 3.10. of the Rules of Lawyer Disciplinary Procedure provides that the Hearing Panel Subcommittee shall file a written recommended decision with the Clerk of the Supreme Court of Appeals.

about public reprimands, suspensions or annulments of attorneys' licenses to practice law." *Lawyer Disciplinary Board v. Lusk,* 212 W.Va. 456, 461, 574 S.E.2d 788, 793 (2002); syl. pt. 2, *Barber, supra;* syl. pt. 3, *Lawyer Disciplinary Board v. Frame,* 198 W.Va. 166, 479 S.E.2d 676 (1996). *See also,* 2A M.J. *Attorney and Client* § 55 (1993), stating that the Supreme Court of Appeals of West Virginia "is the final arbiter of legal ethics problems."

■ Rule 3.7. of the West Virginia Rules of Lawyer Disciplinary Procedure provides that, in order to recommend the imposition of discipline of any lawyer, "the allegations of the formal charge must be proved by clear and convincing evidence." *Lusk, supra,* 212 W.Va. at 461, 574 S.E.2d at 793; syl. pt. 2, *Lawyer Disciplinary Board v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). In this case, however, the agreement on sanctions entered into between the respondent and the Special Lawyer Disciplinary Counsel was received by the Hearing Panel Subcommittee during the June 2004 hearing. At that time, the Subcommittee indicated that it would adopt the agreement and include it in the Subcommittee's recommendation to this Court. Nevertheless, the Subcommittee completed the taking of evidence in the case as required for this Court's independent review. Accordingly, the Hearing Panel Subcommittee proceeded correctly in providing this Court with both the written agreement on sanctions and a full record for purposes of *de novo* review. Both the respondent and the Special Lawyer Disciplinary Counsel urge this Court to adopt the Subcommittee's recommendation which sets forth the agreement on sanctions.[5]

Rule 3.15. of the Rules of Lawyer Disciplinary Procedure states that the Hearing Panel Subcommittee may recommend or this Court may impose as a sanction, a "limitation on the nature or extent of future practice" of the offending lawyer. Factors to be considered in imposing that sanction, or other sanctions, are set forth in Rule 3.16. As syllabus point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan,* 204 W.Va. 495, 513 S.E.2d 722 (1998), holds:

Rule 3.16. of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 6, *Barber, supra;* syl. pt. 4, *Lawyer Disciplinary Board v. Battistelli,* 206 W.Va. 197, 523 S.E.2d 257 (1999). *See also,* syl. pt. 3, *Lawyer Disciplinary Board v. Keenan,* 208 W.Va. 645, 542 S.E.2d 466 (2000); syl. pt. 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987).

■ Here, although the facts were disputed, a review of the record demonstrates a basis warranting the adoption of the agreement on sanctions entered into by the parties. In the circumstances involving Kevin James Berry, the evidence brought out during the hearing before the Hearing Panel Subcommittee and in various depositions indicated that Al Richter, although character-

---

5. Rule 3.12. of the Rules of Lawyer Disciplinary Procedure acknowledges that the parties may consent to the recommended disposition filed by the Hearing Panel Subcommittee with this Court. In that regard, it should be noted that the respondent, an Illinois lawyer, has not raised any jurisdictional challenges to these proceedings. Rather, the respondent stipulated as follows:

Respondent is not now and has never been a licensed member of the West Virginia State Bar although he has regularly been admitted to practice law in individual cases pending within this State on a *pro hac vice* basis and, as a consequence, is subject to the jurisdiction of the Supreme Court of Appeals of West Virginia and its properly constituted Lawyer Disciplinary Board.

Thus, although the parties are without authority to confer jurisdiction upon this Court, the circumstances herein reveal no jurisdictional impediment to a final disposition in this case.

ized as a "crusader," maintained regular contact with the respondent and the Lakin Law Firm between the time that his own litigation was successfully completed and when he appeared at Berry's home. In addition, Berry indicated before the Subcommittee that Richter told him: "We don't do our clients that way," meaning that the Lakin Law Firm would not sell Berry out in resolving his injury claim. Moreover, in the case of Denver Copley, the respondent personally accompanied Colin Kelley in an attempt to visit Copley at his home during a period of time when Kelley was repeatedly telephoning Copley allegedly to solicit him upon behalf of the Lakin Law Firm.

In view of the entirety of the evidence, and in view of the mitigating factors of the respondent's impending retirement and the absence of any ethics charges in the past, this Court is of the opinion that the agreement on sanctions, as set forth in the recommendation of the Hearing Panel Subcommittee, should be adopted as it relates to the respondent's conduct under Counts I and II. of the formal Statement of Charges. Moreover, the agreement should be adopted as to Count III. concerning the Lakin Law Firm itself, inasmuch as the agreement, in that regard, admonishes the Firm and the respondent not to violate the West Virginia Rules of Professional Conduct, with emphasis placed upon certain provisions thereof.[6] Such a result as to the agreement on sanctions and subsequent recommendation is consistent with Rules 3.15. and 3.16., and, certainly, any violation of the West Virginia Rules of Professional Conduct by the Lakin Law Firm, or any attorney in it, would result in severe consequences.

### III.

### Conclusion

Upon all of the above, this Court adopts the recommendation of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board, filed with this Court on October 13, 2004, that the respondent, L.

Thomas Lakin, be prohibited from practicing law in this State for a period of twelve months, subject to limited exceptions, and that his law firm, known as the Lakin Law Firm, be prohibited from engaging in certain activities in this State which would constitute violations of the West Virginia Rules of Professional Conduct, those sanctions concerning the respondent, L. Thomas Lakin, and the Lakin Law Firm being fully recited in the written agreement on sanctions set forth above.

> Recommended Sanctions of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board, Including Certain Prohibitions Upon Practicing Law Within This State for a Period of Twelve Months, Adopted

STARCHER, J., concurring, in part, and dissenting, in part.

When Governor Joe Manchin said "West Virginia's Open for Business," I do not think he meant that out-of-state lawyers were free to come into West Virginia and attempt to steal the clients of our State lawyers while violating our Rules of Professional Conduct. In this case the majority adopts the recommendations of the Hearing Panel Subcommittee of the West Virginia Lawyer Disciplinary Board in disciplining lawyer L. Thomas Lakin. I concur with the majority's decision to prohibit Mr. Lakin, individually, from practicing law in this State for a period of twelve months. However, I vigorously dissent to the "empty sanctions" placed upon Mr. Lakin's law firm.

Mr. Lakin retired from the practice of law some time after the complaints that are the subject of this case were brought against him. The sanctions levied against him individually will not negatively affect him, or his Illinois firm's practice of law. The record reflects that Mr. Lakin now lives in California, and the sanctions against him do nothing to affect his firm's credibility and future endeavors.

---

**6.** The formal Statement of Charges filed by the Investigative Panel of the Lawyer Disciplinary Board did not name any lawyers of the Lakin Law Firm individually, other than the respon-

dent whom, we note, was the sole owner of the Lakin Law Firm at all times material to these charges.

The majority states that the Lakin Law Firm must only follow the West Virginia Rules of Professional Conduct. This is an "empty" sanction because the firm is obligated to follow the rules of professional conduct simply because they exist.

I would have placed the same sanctions on the Lakin Law Firm that this Court placed on Mr. Lakin individually.

In this respect I dissent.